Michael LEHAN, Plaintiff,

v.

**AMBASSADOR PROGRAMS, INC.,**
a Delaware corporation,
Defendant.

No. CS–97–0409–EFS.

United States District Court,
E.D. Washington.

Feb. 11, 2000.

Jeffry Keith Finer, Finer & Pugsley, Spokane, WA, for Plaintiff.

James Michael Kalamon, Paine Hamblen Brooke Coffin, Miller, Spokane, WA, Jon D. Floyd, Paine Hamblen Coffin Brooke & Miller, Spokane, WA, for defendant.

## OPINION REGARDING TESTIMONY OF RULE 35 EXAMINER

SHEA, District Judge.

A pretrial conference was held in the above-entitled matter on January 28, 2000. Plaintiff was represented by Jeffry K. Finer and Shawn D. Price–Sladich and Defendant by Jon Floyd, their respective attorneys of record. At the hearing, the Court reserved ruling regarding Plaintiff's exhibit numbers 034 and 035 and the testimony of Dr. Ronald Klein pending further briefing by the parties. This Order is entered to memorialize the oral ruling of the Court. The Court having reviewed the briefing of the parties and being fully informed, now enters the following written ruling.

## I. BACKGROUND

This action is brought by Michael Lehan against his former employer, Contrarian Group, Inc., doing business as Ambassador Programs International, Inc. ("Ambassador"), alleging that he was unlawfully terminated as a result of his employer's policies and practices of discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. In his Complaint (Ct. Rec. 1 ¶ 5.1), Mr. Lehan claimed he continues to suffer humiliation and emotional damages due to his termination.

On October 19, 1999, the Court ordered a mental exam pursuant to Federal Rules of Civil Procedure 35 ("Rule 35") upon the stipulation of the parties. (Ct.Recs.19, 21.) As stipulated by the parties, (Ct. Rec. 19 ¶ 1), Dr. Ronald Klein was the Rule 35 examiner defense retained to conduct an independent examination of Mr. Lehan's mental state.

The Court presumes that Defendant identified Dr. Klein as an expert witness by October 4, 1999, the date specified in the Amended Scheduling Order (Ct. Rec. 16 ¶ 3). On November 5, 1999, Dr. Ronald Klein performed the Rule 35 exam. (Pl.'s Trial Ex. 033 at 1.) It is undisputed that the Plaintiff received Dr. Klein's report based on the Rule 35 exam. It is unknown whether or not Defendant served a Rule 26(a)(2)(B) report of Dr. Klein.

In Defendant's Witness and Exhibit List (Ct. Rec. 25 ¶ I.8) filed December 30, 1999, Defendant names as a witness its Rule 35 expert Dr. Ronald Klein. Since emotional distress damages are not recoverable under the claims brought by Mr. Lehan, Defendant has represented to the Court that it does not intend to call Dr. Klein as a witness at trial even though he was named on Defendant's expert witness list.

In Plaintiff's List of Witnesses and Exhibits for Trial (Ct. Rec. 30 at 3), untimely filed on January 14, 2000, Plaintiff also names Defendant's Rule 35 expert Dr. Ronald Klein as his own expert witness. Plaintiff did not identify either Dr. Dennis Twigg or Dr. Michal Wilson, the two psychiatrists who had examined or treated Plaintiff after his termination, although their records had been given to Defendant and Dr. Klein prior to the Rule 35 exam. Plaintiff's purpose in calling Dr. Klein as a witness in his case is to counter Defendant's affirmative defense of failure to mitigate. Plaintiff also seeks to introduce at trial through Dr. Klein's testimony the treating records of Dr. Twigg and Dr. Wilson as records which Dr. Klein reviewed and arguably relied upon in forming opinions expressed in his report. Defendant Ambassador Programs, Inc. objects to Plaintiff's use of Dr. Klein and the admission into evidence of the medical records of Dr. Twigg and Dr. Wilson.

## II. DISCUSSION

The presumption underlying litigation is that the trier of fact will be able to decide the "truth" and render a fair verdict based on the evidence produced at trial by parties with competing interests in the outcome. A correlative presumption in litigation is that each party interested in the outcome will make strategic determinations to produce that evidence which will best persuade the trier of fact to rule in its favor. The trier of fact seldom knows the reasoning of the party in determining which witnesses will be called at trial. In the matter of expert witnesses, each party has the opportunity and right to retain and call experts in an effort to increase the potential for success at trial. The corresponding duty is to disclose the identify of the expert witness to the other party and to provide related material. *See* Fed. R.Civ.P. 26(a)(2). The other party then has adequate notice and can undertake discovery as well as select an expert to testify on the same subject or issue. In cases where the physical or mental health of one of the parties may be a relevant factor on the issue of liability or damages, treating physicians are often called to provide evidence on this issue in addition to experts retained specifically for the litigation. *See* Fed.R.Civ.P. 35. The latter are often Rule 35 examiners, as is true of Dr. Klein in this case.

A party also has the right to consult with experts without designating them as expert witnesses and without calling them at trial. The opposing party may *discover* the opinions of that expert only in two situations: 1) as provided in Rule 35, and 2) only "upon a showing of exceptional circumstances under which it is impracticable for the party *seeking discovery* to obtain facts or opinions on the same subject by other means." Fed. R.Civ.P. 26(b)(4)(B) (emphasis added).

Here, Mr. Lehan was given a copy of the Rule 35 report of Dr. Klein. Some courts have found that by submitting to a Rule 35 exam, the party has an "entitlement" not only to the Rule 35 report but also "to call an opposing party's Rule 35 expert, despite the opposing party's desire not to have the expert testify." *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 240 (N.D.Iowa 1996). *See, e.g., Crowe v. Nivison*, 145 F.R.D. 657 (D.Md.1993) (holding submission to an examination by an expert "entitled" the examined party not only to a report of the examination, but also to a deposition of the expert for use at trial); *Fitzpatrick v. Holiday Inns, Inc.*, 507 F.Supp. 979 (E.D.Pa.1981) (holding plain-

tiff entitled to call defendant's expert who had examined plaintiff pursuant to Rule 35). The rationale for such an approach is that this "entitlement" is the corresponding right that accompanies the surrender of a right of privacy upon the duty to submit to the Rule 35 exam. *See Crowe*, 145 F.R.D. at 657–58. "In return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination." *Id.* at 658.

Another approach adopted by courts calls for a " 'discretionary' or 'balancing' standard, involving a balancing of the interests of the party and the court against the potential for prejudice to the party who hired the expert, but who does not wish to use that expert at trial." *House*, 168 F.R.D. at 240. *See, e.g., Peterson v. Willie*, 81 F.3d 1033, 1038 (11th Cir.1996) (holding trial court erred in allowing defendants' counsel to elicit the fact of the prior retention because "the unfair prejudice resulting from disclosing this fact usually outweighs any probative value," though the court did not find that the trial court had erred in permitting the expert to testify about his opinions). These courts have reasoned that the trial is to determine the truth and if the examined party determines that the testimony of a Rule 35 examiner will advance the examined party's advocacy of the truth of the issue, then pursuit of the truth requires that he be allowed to call that witness.

Still other courts have adopted the "exceptional circumstances" approach founded on Fed.R.Civ.P. 26(b)(4)(B). Relying on a combination of Rule 26(b)(4)(B) and Rule 26(b)(4)(A), courts have recognized interests weighing against allowing an opposing party to depose or to call at trial a consultative, non-testifying expert witness and will only allow such testimony in "exceptional circumstances." *See Durflinger v. Artiles*, 727 F.2d 888 (10th Cir.1984); *Rubel v. Eli Lilly & Co.* 160 F.R.D. 458 (S.D.N.Y.1995); *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D.La.1990).

■ This Court is persuaded that the "exceptional circumstances" approach is the proper one to be applied. It recognizes certain underlying principles of litigation: that each party is free to choose its expert witnesses to consult with and to exercise its judgment on whether or not to call the expert witness at trial; that expert witnesses once retained remain the witness of the retaining party; that fair opportunity to evaluate the merits of the case and to conduct discovery to prepare for trial require designation of expert witnesses, delivery of the Rule 26(a)(2) expert report, and identification of expert witnesses to be called at trial; that, correspondingly, each party has the duty in preparing the case for trial to identify its expert witnesses who might be called at trial; and, that the court has the discretion to permit one party to call as a witness at trial the opposing party's expert witness when there has been a showing of "exceptional circumstances."

The benefit to the party subjected to a Rule 35 exam is the right to obtain a report of the Rule 35 examiner and discover the opinions expressed therein in order to prepare for trial. *See* Fed.R.Civ.P. 35(b)(1). That is all that Rule 35 guarantees, and that is confirmed by Rule 26(b)(2)(B). An additional benefit is the possibility that the Rule 35 examiner will agree with the opinion of the examined party's experts or treating physicians thereby increasing the potential for settlement of the case.[1] In practice, the Rule 35 exam may occur after the time set in the scheduling order for designating expert witnesses and providing the related Rule 26(a)(2) report.

Often, the Rule 35 report will be the Rule 26(b)(2)(B) report. This appears to be what occurred here. The Rule 35 exam was conducted and Dr. Klein's report was issued after the date for designation of Defendant's expert witnesses but before the November 16, 1999, discovery cutoff date as set out in the Amended Scheduling Order (Ct. Rec. 16 ¶ 5.) Mr. Lehan, armed with the report, was then able to consult with his expert witnesses and treating physicians to prepare for a de-

---

**1.** Rare, though plausible, is the possibility that the Rule 35 examiner will identify a condition or disease not earlier discovered or recommend a medication or treatment that alleviates the condition.

position of the Rule 35 examiner and his cross-examination at trial.

What is unusual about this case is that Mr. Lehan identified no treating physician or expert witness on his psychological condition. Neither Dr. Twigg, a psychiatrist who treated him after the termination of employment, nor Dr. Wilson, who took over Dr. Twigg's practice, was identified as a witness for trial by Mr. Lehan. Perhaps that is because he can not recover damages for emotional distress in an ADEA case. *See Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1316 (9th Cir.1982) (stating punitive and emotional damages are unavailable for a violation of the ADEA). Perhaps it is for other reasons. The report of Dr. Klein contains the following:

> He [Mr. Lehan] did see Dr. Twigg a few times for psychiatric consultation. He has seen Dr. Michal Wilson who assumed Dr. Twigg's psychiatric practice after Dr. Twigg left the state and Mr. Lehan has been getting medication from Dr. Wilson. He also noted that Dr. Wilson told him he would not be of much help to Mr. Lehan regarding the legal aspects of his case and did not understand why he should have to provide information to Mr. Lehan's attorney in this case. Mr. Lehan characterized Dr. Wilson as a "fuckin' gutless coward."

(Pl.'s Trial Ex. 033 at 3.) The Court can not know if this is factually accurate or whether this is the underlying reason for Mr. Lehan's effort to call Defendant's Rule 35 expert. What is known is that Mr. Lehan had originally indicated that he wanted to call Dr. Klein to get the records of Drs. Twigg and Wilson into evidence in order to show that his psychological condition after termination prevented him from seeking and obtaining employment; this evidence would then rebut the affirmative defense that Mr. Lehan failed to mitigate his damages. That produced Defendant's original objections. However, in his brief on the Rule 35 issue, Mr. Lehan stated that "[i]t is plaintiff's intention to present the testifying expert's opinions and only those facts (including statements by the plaintiff duly recorded by the other examiners and reviewed by the witness) upon which he relies for his opinions." (Pl.'s Mem. in

Opp'n to Mot. in Limine (Ct.Rec.37) at 5–6.) This intended use is typical of the use of such witnesses made by the party retaining them and yet, this is Defendant's retained expert witness and remains so whether or not it intends to call Dr. Klein at trial.

The Court believes that this case is factually dissimilar to *House v. Combined Insurance Co. of America*, 168 F.R.D. 236 (N.D.Iowa 1996), where the court, without benefit of the Rule 35 report, apparently inferred that the Rule 35 examiner would express an opinion favorable to the examined party on a material issue and then emphasized that plaintiff's expert witness was a counselor while the Rule 35 examiner was a psychologist. Unlike the *House* court, this Court has reviewed the Rule 35 report of Dr. Klein and does not have to speculate as to its support for the Lehan's position on mitigation of damages. The report reveals Dr. Klein reviewed the records of both Dr. Twigg and Dr. Wilson. There is nothing in Dr. Klein's report of the Rule 35 exam that indicated any reliance by him upon those records in the formation of any opinions expressed by him in the Rule 35 report. Dr. Klein's opinions are found in the Rule 35 report under "CLINICAL IMPRESSIONS" where he states in pertinent part:

> But his [Mr. Lehan's] being terminated from his job did not create new damage nor change old symptoms. He is able to work right now. . . . His history would indicate that psychological stress associated with his war time experience and more recently with the break up of his ten year girlfriend relationship are clearly the driving factors in his current daily function.

(Pl.'s Trial Ex. 033 at 6.)

Recalling that the basis for Mr. Lehan's effort to call Dr. Klein is to rebut the defense of failure to mitigate and also recalling that there is no recovery in an ADEA case for emotional damages, those observations by Dr. Klein do not lead to the inference that Defendant is declining to call Dr. Klein as a witness to prevent testimony supporting Mr. Lehan on any issue including failure to mitigate damages. Additionally, *House's* preference for psychologists over counselors is an unreliable basis for granting Mr. Lehan the

right to call the Rule 35 examiner. To apply the *House* preference here would presumably require denial of Mr. Lehan's request to call Dr. Klein, a psychologist, when Mr. Lehan could have identified as witnesses either Dr. Twigg or Dr. Wilson, both treating psychiatrists. However, this Court believes that applying the *House* preference would be unreliable stereotyping of the professionals and no basis for a decision on Defendant's objections. On the issue of whether Mr. Lehan's termination caused him such a mental or emotional condition which prevented him from seeking employment, psychologists, psychiatrists and also mental health counselors are equally qualified to express an opinion.

In sum, adoption of the "exceptional circumstances" test preserves the fundamental principles governing litigation while enabling the court to exercise its discretion to permit the calling of the Rule 35 examiner by the examined party upon the proper showing when justice requires. The Court finds Mr. Lehan has not indicated any exceptional circumstances warranting the Court's discretion to allow him to call the Defendant's Rule 35 examiner. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's objections to Plaintiff's exhibit numbers 034 and 035 and the testimony of Dr. Ronald Klein are **GRANTED.**

2. Plaintiff may not call Dr. Ronald Klein as a witness in his case-in-chief and, absent a foundational witness, exhibit numbers 034 and 035 are **EXCLUDED** as evidence.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.